UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MERISANT WORLDWIDE, INC., et al.,[1] | ) ) ) | Case No. 09-10059 (PJW) |
| | ) | Jointly Administered |
| Debtors. | ) ) | |
| | ) | **Objection Deadline: July 2, 2009 at 4:00 p.m. (ET)**<br>**Hearing Date: July 9, 2009 at 11:00 a.m. (ET)** |

## MOTION OF HEARTLAND SWEETENERS, LLC FOR RELIEF FROM AUTOMATIC STAY TO SEND CONTRACT NOTICES TO MERISANT US, INC.

Comes now Heartland Sweeteners, LLC, an Indiana limited liability company ("Heartland"), by counsel, and for its Motion Of Heartland Sweeteners, LLC For Relief From Automatic Stay To Send Contract Notices To Merisant US, Inc. ("Motion"), respectfully represents to the Court as follows:

1. On January 9, 2009 (the "Petition Date"), Merisant US, Inc. ("Merisant") and its affiliates filed this Chapter 11 case. Merisant is engaged in the business of manufacturing and distributing artificial sweeteners that include aspartame, saccharin and other high intensity sweeteners.

2. Heartland, whose principal place of business is in Carmel, Indiana, is also engaged in the business of manufacturing and distributing artificial sweeteners. However, Heartland's products include sucralose as the key ingredient. The Heartland sweeteners are marketed and sold using either private label packaging or packaging that bears the Nevella® trademark owned by Heartland.

---

[1] The Debtors are: Merisant Worldwide, Inc. (Tax ID No. XX-XXX9000), Merisant Company (Tax ID No. XX-XXX8321), Merisant Foreign Holdings I, Inc. (Tax ID No. XX-XXX6579), Merisant US, Inc. (Tax ID No. XX-XXX7233), Whole Earth Sweetener Company LLC (Tax ID No. XX-XXX3024), and Whole Earth Foreign Holdings LLC. The mailing address for all of the Debtors is 33 North Dearborn, Suite 200, Chicago, Illinois 60602.

3. Under covenants not to compete in favor of Heartland, Merisant may not solicit or sell tabletop sweetener products containing sucralose in the United States. Heartland is concerned that Merisant is actively attempting to and is selling tabletop sweeteners containing sucralose in the United States. Heartland is further concerned that Merisant's strategy and plan to exit bankruptcy relies upon selling tabletop sucralose products in violation of its agreements with Heartland.

4. Merisant is also obligated to keep certain information from and about Heartland confidential. Heartland has received reports that Merisant representatives have disclosed information about Heartland which Heartland believes is covered by the confidentiality agreements in place.

5. Prior to the Petition Date, Merisant and Heartland entered into certain contracts at issue: (a) the Toll Manufacturing Agreement dated February 17, 2006, a true and accurate copy of which is filed herewith under seal as <u>Exhibit A</u> (the "Toll Agreement"); and (b) the Distribution Agreement dated July 12, 2007, a true and accurate copy of which is filed herewith under seal as <u>Exhibit B</u>. Schedule G (Leases and Executory Contracts) filed by Merisant lists the Toll Agreement as an executory contract; however, the Schedule G does not reference the Distribution Agreement.

6. The aforementioned non-compete and confidentiality covenants are contained in the Toll Agreement and Distribution Agreement, more particularly described below.

### THE TOLL AGREEMENT

7. Although the Toll Agreement speaks for itself, the agreement generally provides that Merisant will provide certain manufacturing services for Heartland in the production of some Heartland products. The original term of the Toll Agreement was scheduled to expire on

December 31, 2008; however, the agreement automatically renewed for one year and is now scheduled to expire on December 31, 2009.

8. On information and belief, the Toll Agreement is profitable to the Merisant estate. However, notwithstanding the profitability of such contract, on April 29, 2009, Merisant delivered a notice to Heartland exercising a clause to terminate the Toll Agreement as of June 29, 2009.

9. Section 8.4 of the Toll Agreement includes a non-compete covenant that survives termination of the contract. Section 12.2 of the Toll Agreement includes a confidentiality covenant that survives termination of the contract. Merisant has breached and continues to breach the Toll Agreement.

10. Section 6 of the Toll Agreement requires Merisant to allow inspection of its facility on 48 hours notice during hours when the products are being produced. Despite having agreed to a date for such inspection Merisant simply refused to allow an inspection of its facility. Merisant has breached the Toll Agreement.

11. In section 8.2 and 8.3 of the Toll Agreement Merisant agreed that when it exercised its right to terminate the Toll Agreement on 60 days notice that it would provide reasonable assistance in transferring production to another manufacturer. Merisant has breached the Toll Agreement.

12. Heartland intends to send a notice of default to Merisant describing its breaches of the Toll Agreement and further demanding that Merisant comply with the non-compete and confidentiality covenants found in Sections 8.4 and 12.2 of said contract.

## THE DISTRIBUTION AGREEMENT

13.     Although the Distribution Agreement speaks for itself, the agreement generally provides for the joint marketing and distribution of the Heartland and Merisant sweeteners.

14.     Section 2.1(c) of the Distribution Agreement includes a non-compete covenant that survives for 270 days after proper termination of the agreement. Article X of the Distribution Agreement includes various confidentiality covenants that also survive termination of the agreement. Merisant has and continues to breach the non-compete and confidentiality covenants of the Distribution Agreement.

15.     Prior to the Petition Date, on August 29, 2008, Heartland delivered notice to Merisant of various material breaches under the Distribution Agreement. More than thirty (30) days have elapsed since the notice of breach was delivered to Merisant, and the breaches have never been cured. Thus, Heartland has the contracted right to terminate the Distribution Agreement.

16.     Prior to the Petition Date, but more than one year after the Distribution Agreement was executed, Merisant informed Heartland that Merisant had unilaterally "rescinded" the Distribution Agreement. The alleged rescission was a nullity, unsupported by the applicable law and facts.

17.     Heartland believes that Merisant purported to rescind the Distribution Agreement in an attempt to avoid compliance with the non compete and confidentiality covenants in the Distribution Agreement.

18.     The Distribution Agreement was never terminated so Merisant's obligations under the non-compete covenant continue to be in place and the 270 day time period has not commenced. Heartland intends to send a notice of termination to Merisant further describing its

4

breaches of the Distribution Agreement, which notice shall trigger commencement of the 270 day non-compete period.

**STAY RELIEF REQUESTED**

19. The case law is not entirely clear as to whether relief from the automatic stay must be obtained prior to sending default notices or notices of termination to a debtor-in-possession. Compare Valley Forge Plaza Associates v. Schwartz, 114 B.R. 60, 62 (E.D.Pa. 1990) (termination notice did not violate the automatic stay) with In re Schewe, 94 B.R. 938 (Bankr. W.D. Mich. 1989) ("cause" existed to modify the stay to allow lessor to deliver notice of termination).

20. However, as a precautionary measure, Heartland seeks relief from the automatic stay (or an Order that the stay does not apply) so that it is authorized to:

   a. send a notice to Merisant describing its breaches of the Toll Agreement and demanding that Merisant comply with the inspection, cooperation, non-compete and confidentiality covenants found in Sections 6, 8.2, 8.3, 8.4 and 12.2 of such contract; and

   b. send a notice to Merisant terminating the Distribution Agreement, thereby commencing the final 270 day non-compete period under such contract.

21. Pursuant to 11 U.S.C. § 362(d) and Bankruptcy Rule 4001, Heartland seeks relief from the automatic stay for the purpose of delivering the aforementioned notices to Merisant.

22. "Cause" exists for lifting the automatic stay because Heartland merely seeks authority to deliver notices consistent with the terms of the Toll Agreement and Distribution Agreement, and it is well settled that a bankruptcy filing does not enlarge the debtor's contract rights.

23. Heartland may be forced to seek further relief from the stay to institute state court litigation, or alternatively file an adversary proceeding for a declaration of its rights to have Merisant abide by the cooperation, inspection, non-compete and confidentiality agreements.

WHEREFORE, Heartland Sweeteners, LLC respectfully requests that the Court enter an Order lifting the automatic stay to allow Heartland to deliver the notices described herein, and granting such other and further relief as is just and proper.

Dated: June 8, 2009

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

/s/ Raymond H. Lemisch
Raymond H. Lemisch, Esquire (No. 4204)
222 Delaware Ave., Suite 801,
Wilmington, DE 19801
302-442-7010 (telephone)
302 442-7012 (facsimile)
rlemisch@beneschlaw.com

-and-

**DANN PECAR NEWMAN & KLEIMAN, P.C.**
James P. Moloy, Ind. Bar No. 10301-49
William L. O'Connor, Ind. Bar No. 14925-22
One American Square, Suite 2300
Indianapolis, IN 46282
Telephone: (317) 632-3232
Facsimile: (317) 632-2962
jmoloy@dannpecar.com
woconnor@dannpecar.com

**COUNSEL FOR HEARTLAND SWEETENERS, LLC**